IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO. 2:05CR302-WHA |
| | ) | |
| SOLOMON MCWILLIAMS | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

The defendant, SOLOMON MCWILLIAMS ["McWilliams"] is charged in a one-count indictment for being a felon in possession of a weapon, in violation of 18 U.S.C. §922(g)(1). The case is pending on the defendant's Motion to Suppress, filed on 23 February 2006 (Doc. # 11) and supplemented on 3 March 2006 (Doc. # 16). The government responded to the motion on 3 March 2006 (D0c. # 17) and to the supplemental motion on 6 April 2006 (Doc. # 22). On 20 March 2006, the court conducted an evidentiary hearing. Only one witness, the officer who conducted the search, testified. Based upon the pleadings and the evidence, and for the reasons stated herein, the Magistrate Judge recommends that the motion to suppress and the supplemental motion be denied.

**I.   ISSUES**

The issue in this case is whether the defendant consented to the search of his vehicle on 18 October 2005 in Montgomery.[1] McWilliams has expanded this rather uncomplicated argument, however, and also insists that the officer's mere request to search his vehicle was

---

[1] The actual presence of the handgun in McWilliams's vehicle is undisputed (See TR. 23).

unconstitutional. As his counsel stated at the evidentiary hearing:

> [T]here was not cause for that request and, therefore - yes, I am taking that position. Everything that happened regarding the police request and the subsequent alleged request was inappropriate given the fact that there was nothing to connect, it is our position that the evidence did not give the officer probable cause to make that request. It is our position, I guess, that police must have some cause before requesting consent to search people's property. The police cannot just request willy-nilly for lack of a better word, permission to search this or that. They have to have cause.

(TR. 27). Counsel relied on *United States v. Pruitt*, 174 F.3d. 1215 (11th Cir. 1999).

The government, in reliance on *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973), refutes the defendant's position and states that the search was constitutionally grounded on the defendant's verbal and written consent.

## II.    FACTS

On the evening of 18 October 2006, Sgt. Jason M. Dinunzio ["Dinunzio"], a robbery homicide detective in the Montgomery Police Department, learned that a robbery had occurred in Montgomery (TR. 3). The information included several details: The suspect allegedly went into a woman's private home "armed with a handgun, [with] a mask on, [then] took her purse and fled the area" (TR. 4).

Dinunzio spoke with the victim, Shaquita Brooks ["Brooks"] and a witness; they described the robber and said that he "fled the residence on foot" in a specific direction (TR. 5). According to Dinunzio, she told him that, when the robbery occurred, she, her aunt, and

2

a male neighbor, Reginald Gamble ["Gamble"], were inside the residence engaged in conversation. The suspect entered the home with a handgun. Brooks described the robber and his clothing, and described his weapon "as a black revolver with a brown handle". He grabbed her purse, containing approximately $1,650, and fled on foot "toward Columbia Avenue" (TR. 6). Brooks told Dinunzio that earlier in the day, a male called "Jay" was at her home while they were counting the money, and she believed he may have information about the robbery (TR. 7).[2]

When Dinunzio interviewed Gamble, he corroborated the information provided by Brooks, including "Jay's" presence at the house earlier in the day while they were counting the money (TR. 9). Afterwards, while he was outside in the yard taking photographs, a vehicle approached the house. Both Brooks and Gamble "pointed at the vehicle" and said that "Jay" was in the car (TR. 12). The driver of the vehicle identified himself to Dinunzio as Solomon McWilliams and confirmed that he saw Brooks counting the money. McWilliams said that he slept at the residence the night before and that he left before the robbery. When Dinunzio inquired of his whereabouts during the robbery, McWilliams said that he and a friend "were driving around"; the only destination he identified was Gibbs Village (TR. 13).

Dinunzio asked McWilliams for consent to search his car, explaining that the occupants of the home had implicated him in the robbery. In response, McWilliams was "somewhat reluctant" at first, then, taking Dinunzio aside, told him that "he had something

---

[2]Dinunzio took an electronic statement from Brooks that was introduced in evidence as GX-1.

in the vehicle" (TR. 14). When Dinunzio asked him to identify what he had, MCWILLIAMS said that he had a handgun in his car (TR. 14). Dinunzio told McWilliams that it was "okay" to have a handgun in his vehicle "for protection as long as they're registered". He also said that he would "check the handgun out" later, but needed to search the vehicle just then (TR. 15). He then asked McWilliams again for permission to search the vehicle, and McWilliams gave "verbal consent" and signed a written consent form (TR. 15-16).

Dinunzio said that he read the form to McWilliams before the defendant signed it. He denied any threats, coercion, or intimidation in the execution of the form, and stated that McWilliams signed it on his own free will (TR. 20). During the search, Dinunzio found a loaded handgun. He testified that he believed that, based on the following facts, he had probable cause to search the car even without McWilliams's consent:

> He was being implicated as a suspect in the robbery due to him [sic] being present while they were counting the money. Him [sic] having knowledge that they had this amount of money in the house and in him [sic] leaving about an hour or two after the robbery and then immediately coming back and them pointing him out as soon as he pulls up.

(TR. 21). Dinunzio said that his independent probable cause was also based on McWilliams's admission that he had a handgun in the vehicle, inasmuch as the robber had a gun (TR. 22). He acknowledged, however, that he had no direct evidence that McWilliams was involved in the robbery or that his vehicle contained any of the money taken (TR. 38).

In his supplemental motion, McWilliams's counsel stated that the defendant did not consent to the search and that police informed him that they had a warrant (See Doc. # 16).

No such testimony was offered at the evidentiary hearing. Sgt. Dinunzio was the only witness who testified, and none of the documents admitted into evidence refuted his testimony. For those reasons, and because Sgt. Dinunzio was credible, the court has disregarded the defendant's claim that he did not consent to the search.

### III.  DISCUSSION

While this has been interpreted generally to require law enforcement officials to obtain a warrant based on probable cause prior to searching even a vehicle, neither a warrant nor probable cause are required when a voluntary consent to search is obtained in advance. *See*, *e.g.*, **United States v. Santa**, 236 F.3d 662, 676 (11th Cir. 2000); **United States v. Butler**, 102 F.3d 1191, 1197 (11th Cir. 1997).

To be voluntary, consent must be knowing and freely given and cannot, therefore, be the product of duress or coercion. *See*, *e.g.*, **United States v. Purcell**, 236 F.3d 1274, 1281 (11th Cir. 2001). The consent issue in this case is nuanced, however. McWilliams does not challenge the stop. Instead, he contends that "the police improperly sought and obtained consent to search [his] vehicle", and, on that basis alone, he seeks suppression. McWilliams, however, has failed to cite a single authority which supports his argument.

Four days after McWilliams filed his first motion to suppress, the court issued an order which preliminarily concluded that no evidentiary hearing was required and "the motion has dubious merit" (See Doc. # 12, p. 1). The court further elucidated its early conclusions:

First, that proposition, i.e., that police officers must have probable cause to request consent to search a vehicle, contradicts applicable constitutional law and theory. "[T]here is nothing constitutionally suspect in a person's voluntarily allowing a search". *Schneckloth v. Bustamonte*, 412 U.S. 218, 243 (U.S. 1973).

McWilliams cites *Illinois v. Gates*, but the Supreme Court did not reach that conclusion in *Gates;* nor did it reach a conclusion that could reasonably be construed as authority for McWilliams' proposition. Indeed, the facts in Gates did not involve a warrantless search or consent.[3] Instead, Gates discussed - at great length - the particulars of probable cause as reflected in an affidavit for a search warrant. Few, if any, of its principles are applicable to the facts of this case, and counsel's reliance upon *Gates* in this case is enigmatic.

McWilliams is correct in his assertion that an officer can conduct a warrantless search or seizure of a vehicle if there exists probable cause to believe that the vehicle contains contraband or other evidence which is subject to seizure under the law and there exist exigent circumstances which necessitate a search or seizure. *United States v. Alexander*, 835 F.2d 1406, 1409 (11th Cir. 1988). Probable cause to search exists "when the facts and circumstances would lead a reasonably prudent [person] to believe that the vehicle contains contraband." *Id*., quoting *United States v. Clark*, 559 F.2d 420, 424 (5th Cir.), *cert. denied*, 434 U.S. 969, 98 S. Ct. 516, 54 L. Ed. 2d 457 (1977). *See also United States v. Nixon*, 918 F.2d 895 (11th Cir. 1990).

However, probable cause to search McWilliams' vehicle is not an issue in this case because (1) in the absence of probable cause, officers may execute a warrantless search of a vehicle if the defendant consents to the search, and (2) in the instant case, the defendant *admits* that he *consented* to the search. "A warrantless search undertaken without probable cause is valid if conducted pursuant to consent." *United States v. Butler*, 102

---

[3] *Katz v. United States*, 389 U.S. 347 (1967), is inapplicable for the same reasons. Thus, the court rejects McWilliams' reliance upon that opinion as well.

> F.3d 1191, 1197 (11th Cir. 1997).

The court then directed McWilliams to "show cause in writing why his motion to suppress should not be summarily denied. In response, McWilliams filed his supplemental motion, which included the following declarations:

> [F]urther investigation has revealed and testimony at the suppression hearing will be that Mr. McWilliams was actually inside the residence when police decided to question him. He was not approaching the residence as previously referenced.
> . . . . . . . .
> [Because t]here was not consent to search the vehicle, the motion is not due to be summarily denied and a [sic] evidentiary hearing is respectfully requested.

Based solely upon those allegations, which placed in question the very existence of consent and portended disputatious testimony, the court set the matter for a hearing. At the hearing, however, only one witness  - Sgt. Dinunzio -  testified. There was absolutely no evidence offered or admitted which contradicted his testimony or supported McWilliams' claim that he did not consent to the search. As a result, the court's preliminary conclusions have now become the law of the case.

McWilliams's reliance upon *United States v. Pruitt*, *supra,* is ill-considered. Pruitt did not involve a consent at all and thus, is not instructive on the issue precisely posed by defendant's counsel. On the other hand, while the facts leading to the prosecution in *Schneckloth v. Bustamonte*, *supra*, cited by the government's counsel at the hearing, do not mirror those of the instant case, the Supreme Court did endorse consent searches with

language that is helpful here:

> In situations where the police have some evidence of illicit activity, but lack probable cause to arrest or search, a search authorized by a valid consent may be the only means of obtaining important and reliable evidence. n9 In the present case for example, while the police had reason to stop the car for traffic violations, the State does not contend that there was probable cause to search the vehicle or that the search was incident to a valid arrest [*228] of any of the occupants. n10 Yet, the search yielded tangible evidence that served as a basis for a prosecution, and provided some assurance that others, wholly innocent of the crime, were not mistakenly brought to trial. And in those cases where there is probable cause to arrest or search, but where the police lack a warrant, a consent search may still be valuable. If the search is conducted and proves fruitless, that in itself may convince the police that an arrest with its possible stigma and embarrassment is unnecessary, or that a far more extensive search pursuant to a warrant is not justified. In short, HN5a search pursuant to consent may result in considerably less inconvenience for the subject of the search, and, *properly conducted, is a constitutionally permissible and wholly legitimate aspect of effective police activity*.

412 U.S. 218, 227-228 [emphasis supplied].

McWilliams' motions should be denied.

## IV.    CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that McWilliams' motions be DENIED.

It is further

ORDERED that the parties shall file any objections to this Recommendation on or before **7 June 2006**. A party must specifically identify the findings in the Recommendation

to which objection is made; frivolous, conclusive, or general objections will not be considered. Failure to file written objections to the Magistrate Judge's proposed findings and recommendations shall bar a party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. **Nettles v. Wainwright**, 677 F.2d 404 (5th Cir. 1982). *See* **Stein v. Reynolds Securities, Inc.**, 667 F.2d 33 (11th Cir. 1982). *See also* **Bonner v. City of Prichard**, 661 F.2d 1206 (11th Cir. 1981, *en banc*).

DONE this 30th day of May, 2006.

/s/ Vanzetta Penn McPherson
VANZETTA PENN MCPHERSON
UNITED STATES MAGISTRATE JUDGE